# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ERIC HILTON, individually and on behalf of other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING LLC; MIDLAND CREDIT MANAGEMENT, INC.; ENCORE CAPITAL GROUP, INC.; and LAW OFFICES OF MICHAEL R. STILLMAN, P.C.<br><br>Defendants. | Case No. 17-cv-11366<br><br><br><br><br>TRIAL BY JURY<br><br>CLASS ACTION |

## COMPLAINT

### INTRODUCTION

1. Plaintiff, Eric Hilton brings this action, individually and on behalf of other persons similarly situated, against Defendant Midland Funding LLC, Midland Credit Management, Inc., Encore Capital Group, Inc., and Stillman Law Office.

2. Defendant Midland Funding, acting through Midland Credit Management, and on behalf of Encore Capital Group, Inc., violated the Fair Debt Collection Practices Act in impermissibly causing Stillman Law Office to file a debt collection lawsuit in state court against Plaintiff that was time barred.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. §1692k (FDCPA).

4. Venue and personal jurisdiction over Defendants in this District is proper because:

    a. Plaintiff resides in the District; and

    b. Defendants caused to be filed the subject lawsuit filed against Plaintiff within a county located within the District; and

    c. Defendant Stillman maintains an office within the District; and

    d. One of Defendant Encores' subsidiaries maintains an office in Warren, MI.

## PARTIES

5. Plaintiff is a natural person who resides within a Michigan county located within the Eastern District of Michigan.

6. Midland Funding, LLC is a wholly-owned subsidiary of Encore Capital Group, Inc.

7. Midland Credit Management, Inc. is a wholly-owned subsidiary of Encore Capital Group, Inc.

8. Midland Funding is engaged in the business of taking title to charged-off consumer debts, including credit card, auto deficiency and telecom receivables purchased from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios. (Encore's SEC filing on form 10-Q, Aug. 8, 2008).

9. Midland Funding frequently files state civil lawsuits to collect debts using affidavits that state that Midland Credit Management, Inc. is the servicer of the debt account.

10. Encore's webpage has stated that, "Encore Capital Group is a leading provider of debt management and recovery solutions for consumers and property owners across a broad range of assets. Through its subsidiaries, the company purchases portfolios of consumer receivables from major banks, credit unions, and utility providers, and partners with individuals as they repay their obligations and work toward financial recovery."

11. Encore's webpage has stated that, "If you are one of our consumers, you probably know us as Midland Credit Management. Midland Credit Management is an Encore Capital Group subsidiary [.]" * * * "If you have received a letter or phone call from us, seen our name on your credit report, or received a letter or phone call from a law firm or collection agency acting on our behalf, it means that your obligation (credit card, auto loan, consumer loan, home

or cell phone bill, student loan) to a lender is now your obligation to Midland, as a result of our agreement with that lender. Please give us a call or log into our site to create a repayment arrangement or discuss the status of your account."

12. According to Encore's November 1, 2012 10-Q filing with the SEC:

Encore Capital Group, Inc. ("Encore"), through its subsidiaries (collectively, the "Company") * * * purchases portfolios of defaulted consumer receivables and manages them by partnering with individuals as they repay their obligations and work toward financial recovery. Defaulted receivables are consumers' unpaid financial commitments to credit originators, including banks, credit unions, consumer finance companies, commercial retailers, auto finance companies, and telecommunication companies, which the Company purchases at deep discounts.

*Id.*, p. 5.

13. Defendants "Midland, MCM . . . are wholly-owned subsidiaries of Encore Capital and share common officers and directors with Encore Capital. Midland and MCM operate in concert with one another, and under the direct supervision and control of Encore Capital, to purchase and collect Consumer Debt on a massive scale." *In the Matter of: Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., et al.*, 2015-CFPB-0022, Doc. 1, Consent Order, p. 5 (CFPB Sept. 9, 2015) *available at* http://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf.

14. Encore Capital Group Midland Funding, LLC, and Midland Credit Management, Inc., each are a debt collector under the FDCPA as they are in the

business of regularly collecting debts. *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870, 880 (N.D. Ill 2009); *Miller v. Midland Credit Mgmt., Inc.*, 621 F. Supp. 2d 621, 634-35 (N.D. Ill. 2009); *Hernandez v. Midland Credit Mgmt., Inc.*, No. 04 C 7844, 2007 U.S. Dist. LEXIS 16054, 2007 WL 2874059, at *14-16 (N.D. Ill. Sept. 25, 2007); *Jackson v. Midland Funding, LLC,* 754 F. Supp. 2d 711, 715 n. 5 (D. N.J. 2010) *aff'd* 468 Fed. Appx. 123; 2012 U.S. App. LEXIS 3025 (3d Cir. 2012) (unpublished).

15. Stillman Law Office regularly files state court lawsuits seeking to collect a debt that is in default at the time of the filing of the lawsuit on behalf of its clients and therefore is a debt collector. *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

## FACTS

16. According to Dell Inc.'s 10-Q SEC filing on 12/3/12, "Dell" is Dell Inc. individually and together with its consolidated subsidiaries, and:

> Dell offers or arranges various financing options and services for its business and consumer customers in the U.S. and Canada through Dell Financial Services ("DFS"). DFS's key activities include the origination, collection, and servicing of customer receivables primarily related to the purchase of Dell products and services.
>
> *Id.*, p. 12.
>
> * * *

> Dell makes credit decisions based on proprietary scorecards, which include the customer's credit history, payment history, credit usage, and other credit agency-related elements.
>
> *Id.*, p. 15.
>
> * * *
>
> Dell transfers certain U.S. customer financing receivables to Special Purpose Entities ("SPEs") which meet the definition of a Variable Interest Entity ("VIE") and are consolidated into Dell's Condensed Consolidated Financial Statements.
>
> *Id.*, p. 16.

17. On or around 2002 or 2003, Plaintiff went online to Dell.com and purchased a Dell computer for personal use.

18. In conjunction with Plaintiff's online purchase at Dell.com, Dell Inc. agreed to provide goods to Plaintiff and through that same transaction on Dell.com Plaintiff's purchase of goods was financed.

19. This financing process is similar to those done by an automobile dealership, where the dealership sells the good and arranges financing for the buyer.

20. On information and belief, Dell placed the financing of Plaintiff's purchase for goods with Dell Financial Services ("DFS") and per DFS' agreement with CIT, within two days from the date of the loan's origination CIT transferred title of the loan back to DFS.

21. On information and belief, DFS then placed the loan in a special purpose entity that then transferred the loan to another entity that DFS had an interest in through its related entities and partners, including Dell Inc.

22. DFS then serviced the loan and caused to be sent to Plaintiff at least one monthly billing statement.

23. Plaintiff made at least one monthly payment directly to DFS for the benefit of Dell, Inc., for his financed purchase.

24. No debtor – creditor relationship existed between Plaintiff and CIT.

25. Plaintiff did not have any direct contact with CIT.

26. No payment was made by Plaintiff in relation to the amount financed for his Dell.com purchase on or after February 3, 2008.

27. At a point in time before February 3, 2008, Plaintiff was in default.

28. At some point in time, DFS, as a part of a portfolio of nonperforming account receivables, sold Plaintiff's debt to Midland Funding, LLC.

29. On February 3, 2014, Plaintiff was sued in the case captioned, <u>Midland Funding LLC Assignee of CIT Bank v. Eric Hilton, an Ind.</u>, 12 M1 149423, in the State of Michigan, 29th Judicial District (the "state court matter").

30. A redacted true and correct copy of that complaint and all of the attachments is attached hereto as Exhibit A.

**COUNT I - FDCPA**

31. Plaintiff incorporates paragraphs 1-30 above.

15 U.S.C § 1692e, in pertinent part, provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (2) The false representation of --
>
>    (A) the character, amount, or legal status of any debt. . . .
>
> * * *
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

32. The FDCPA broadly prohibits unfair or unconscionable collection methods including filing suit on a time barred debt. See e.g. *Murray v. CCB Credit Services, Inc.*, 04 C 7456, 2004 U.S. Dist. LEXIS 25361, 2004 WL 2943656, at *2 (N.D. Ill. Dec. 15, 2004) ("[A] violation of the FDCPA occurs if the attempt to collect the time-barred debt is accompanied by a threat to sue, or if litigation has actually begun."); *Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 616

(N.D. Ill. 2001); *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987).

33. Defendants' conduct related to the state court matter violated 15 U.S.C §§ 1692e(2)(A), e(5) and e(10).

34. In defending the state court matter, Plaintiff incurred out of pocket actual damages.

## CLASS ALLEGATIONS

35. The class consists of: All individuals with a Michigan address, whom were sued by Midland Funding LLC, on a debt originating with CIT Bank, where the suit was filed over four years after default, alternatively over six years after default, during a time period from January 23, 2014, though January 23, 2015.

36. On information and belief, the class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class above.

37. If it is determine that there are more than 40 persons with a Michigan address, whom Stillman Law Office filed a suit on behalf of Midland Funding LLC, on a debt originating with CIT Bank, where the suit was filed over four years after default, alternatively over six years after default, during a time period from from January 23, 2014, though January 23, 2015, Plaintiff places Stillman Law Office along with potential class members on notice and expressly reserves for the

purpose of relation back to the original date of the filing of the Complaint in *Hilton v. Midland Funding LLC, et al,* 2:15-cv-10322-LVP-APP (E.D. Mich.), the ability to add the above as a class allegation against Stillman Law Office *See generally Sokolski v. TransUnion Corp.*, 178 F.R.D. 393 (E.D.N.Y. 1998); *Navarro v Eskanos & Adler,* No. C 06-02231 WHA, 2006 U.S. Dist. LEXIS 90880 * 9 – 10 (N.D. Cal. Dec. 7, 2006).

38. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common question is whether Plaintiff and the class members were sued on a time barred debt.

39. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained legal counsel experienced in handling class actions brought under the FDCPA.

40. A class action is an appropriate method for the fair and efficient adjudication of this controversy.

**WHEREFORE,** Plaintiff requests this Honorable Court to enter judgment for Plaintiff and any class certified against Defendants for:

    A. Statutory and actual damages; and

    B. Attorney's fees and costs.

                    Respectfully submitted,

s/ Curtis C. Warner<br>Curtis C. Warner

Curtis C. Warner (P59915)
WARNER LAW FIRM, LLC
350 S. Northwest HWY, Ste. 300
(847) 701-5290 (TEL)
cwarner@warner.legal

John A. Evancek (P66157)
KELLEY & EVANCHECK PC
43695 Michigan Ave.
Canton, MI 48188
(734) 397-4540 (TEL)
john@kelawpc.com

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner (P59915)
WARNER LAW FIRM, LLC
350 S. Northwest HWY, Ste. 300
(847) 701-5290 (TEL)
cwarner@warner.legal

John A. Evancek (P66157)
KELLEY & EVANCHECK PC
43695 Michigan Ave.
Canton, MI 48188
(734) 397-4540 (TEL)
john@kelawpc.com